UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

OLIVIA J. DRAKE,

                              Plaintiff,

     -v-                                                                    8:08-CV-1007

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                          OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER             MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, NY 12901

OFFICE OF REGIONAL GENERAL COUNSEL    SIXTINA FERNANDEZ, ESQ.
SOCIAL SECURITY ADMIN. REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       This matter is brought pursuant to §§ 205(g) & 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability benefits and Supplemental Security Income. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Olivia Drake ("plaintiff" or "Drake") filed an application for Disability Insurance Benefits and Supplemental Security Income payments on April 3, 2006, claiming a period of disability beginning on April 4, 2006. Her claim was denied on October 17, 2006. Plaintiff filed a request for a hearing on December 22, 2006, at which time she waived her right to personally appear and testify at a hearing. The ALJ rendered a decision on March 27, 2008, denying plaintiff's claims.

Plaintiff appealed the ALJ's decision to the Appeals Council. On September 12, 2008, the Appeals Council issued an order denying plaintiff's request for review. Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed the instant complaint in the district court on September 23, 2008.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).  Even if the record supports contrary findings on particular issues, "the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148.  "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available. 42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "and that there is good cause for the failure to incorporate such evidence into the record" at the administrative hearing. Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643–44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980).  Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing." Id. at 644.  However, where the underlying

administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. U.S. R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

## B.  Disability Determination—The Five-Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluative process to determine whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step, the ALJ must determine whether the claimant is engaged in substantial gainful activity. If so, she is not disabled, and she is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether she has a severe impairment or combination of impairments that significantly restricts her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires the ALJ to determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that the claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine "whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404.1567(a)). "[T]he Commissioner need only show that there is work in the national economy that the

claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an unfavorable decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

### C. Analysis

The ALJ determined that plaintiff had not engaged in substantial gainful activity since April 4, 2006. The ALJ next found that plaintiff's urinary incontinence, back and knee pain, and serous otitis media[1] were severe impairments that did not meet or equal those listed in the regulations. Subsequently, the ALJ determined that Drake had the RFC to perform "light" work. Specifically, plaintiff was found to have the ability to lift and carry 20 pounds occasionally and ten pounds frequently; and to sit, stand, and walk a total of six hours each in an eight-hour workday. The ALJ also noted that plaintiff should be granted access to a handicapped bathroom as needed.

The ALJ then determined that plaintiff could not perform her past relevant work as a certified nurses' assistant, which required exertional levels beyond her RFC. Therefore, the process reached step five, at which the ALJ concluded that since Drake had the RFC to perform a full range of light work she was not disabled.

---

[1] A collection of fluid in the middle ear.

Plaintiff argues that the Commissioner failed to meet his burden at step five of the disability evaluation process. Plaintiff also maintains that the ALJ failed to conduct a full and fair hearing, improperly discounted the opinion of a treating physician, did not take into account the collective impact of plaintiff's impairments, and incorrectly discredited Drake's subjective complaints.

### 1. RFC Determination and the Commissioner's Step-Five Burden

Although plaintiff claims that the Commissioner failed to meet his step-five burden, her conclusory legal argument seems to instead call into question the RFC determination made at step four. In the section of her brief devoted to the Commissioner's step-five burden, plaintiff merely asserts that "the ALJ erroneously found that Ms. Drake is able to perform a wide range of light work in the national economy." Dkt. No. 9, at 9.

After determining that plaintiff had the RFC to perform a full range of light work with the caveat that she be permitted access to a handicapped bathroom, the ALJ applied her age, education, and work experience to the appropriate Medical-Vocational Guideline: 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 2. Because plaintiff is a "younger individual" with a high school education and has previous "unskilled" work experience[2], she is deemed "not disabled" per Rule 202.20. Assuming the ALJ's RFC determination was correct, the application of Rule 202.20 and subsequent finding of "not disabled" was proper. Thus, the issue becomes whether the RFC determination was supported by substantial evidence. In determining that Drake had the RFC to perform light work, the ALJ relied heavily on plaintiff's

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Plaintiff's prior work—grocery store clerk and lifting/moving patients as a nurses' assistant—is consistent with unskilled work. See R. 92–95.

admissions as well as the medical opinions of Dr. Wassef and Dr. Calley. The ALJ also considered the reports of state agency medical consultants and plaintiff's treating physicians.

Plaintiff sought treatment at the Champlain Valley Physicians Hospital Medical Center ("CVPHMC") on numerous occasions between 2004 and 2007 for back pain, kidney and bladder problems, illness, and to give birth to her son. See id. at 168–243. Following a March 2006 visit to the emergency room for back pain, plaintiff was advised by Dr. Calley to remain active and not to lift anything over 20 pounds. Id. at 218, 220. Dr. Calley provided plaintiff with a "Return to Work" form on which she noted that Drake's back injury was work-related, that her "total disability" lasted from March 2 to March 6, 2006, and that she could return to work on March 6, 2006. Id. at 227.

During a July 2006 consultative medical examination, plaintiff informed Dr. Wassef of her physical limitations related to hypertension, kidney and bladder problems, obesity, stress and anxiety, knee and back pain, and headaches. See id. at 116–17. However, Dr. Wassef was "not able to detect evidence of physical limitations in the musculoskeletal system of this claimant." Id. at 119. The only limitation noted by Dr. Wassef was Drake's need to have access to a handicapped bathroom. Id. at 119–20. Also in July 2006, medical consultant Elaine Paige completed a "Physical Residual Functional Capacity Assessment" and noted that plaintiff's medical examination was "essentially benign" and therefore found Drake to have "no physical limitations." Id. at 144–47.

In a June 2007 evaluation at the Spine Institute of New England, plaintiff was found to have "a pain distribution in a dermatomal pattern and . . . positive physical examination findings." Id. at 165. Drake was subsequently advised to "[p]articipate in normal daily activities without limitation." Id.

Finally, plaintiff advised that even though she had suffered from her severe impairments since birth, she was nonetheless able to work as a full-time certified nursing assistant from 2005 to 2006—a job that required her to frequently lift 50 pounds or more. Id. at 76–77. Drake also claimed that she is able to care for her son, perform household chores, cook, visit her mother daily, drive a car, and run errands. Id. at 109, 111, 113, 117.

Accordingly, the medical reports and opinions as well as plaintiff's admissions constitute substantial evidence supporting the ALJ's determination that Drake had the RFC to perform light work.

### 2. Full and Fair Hearing

Plaintiff argues that she was deprived of a full and fair hearing because she was not properly informed of her right to counsel, she did not knowingly and voluntarily waive her right to appear at a hearing, and the ALJ failed to obtain medical records for the period of November 2007 to March 2008.

<u>Right to Counsel and Waiver of Appearance</u>

There is no constitutional right to representation at a hearing to determine eligibility for social security benefits. <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 506 (2d Cir. 2009), cert. denied, 130 S. Ct. 1503 (2010). However, there is a right to representation set forth in the statute and regulations. Id. (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705). If a person claiming benefits is properly informed of the right to representation, it may be waived. Id. The statutory and regulatory scheme requires that the Commissioner of Social Security "'notify [the] claimant in writing' of (1) her 'options for obtaining [an] attorney to represent [her]' at her hearing, and (2) 'the availability . . . of . . . organizations which provide legal

services free of charge' to 'qualifying claimants.'" Id. (quoting 42 U.S.C. § 406(c), 1382(d)(2)(D); citing 20 C.F.R. § 404.1706).[3]

The Notice of Disapproved Claim sent to plaintiff on October 17, 2006, set forth the procedure for her right to request a hearing and to obtain representation for the hearing. R. 30–33. This notice stressed the importance of appearing at the hearing and noted that "[t]he hearing is your chance to tell the ALJ why you disagree with the decision in your case. You can give the ALJ new evidence and bring people to testify for you." Id. at 32. Under the heading "If You Want Help With Your Appeal" the notice states:

> You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee. We do not withhold money from SSI benefits to pay your lawyer.

Id. at 32.

Immediately above plaintiff's signature on the December 22, 2006, Request for Hearing by Administrative Law Judge were the words: "You have a right to be represented at the hearing. If you are not represented but would like to be, your Social Security Office will give you a list of legal referral and service organizations." Id. at 39. Also on this form, Drake checked the box indicating that she did not wish to appear and requested that a decision be

---

[3] In support of her argument that additional disclosures of the right to representation are required, plaintiff cites cases from the Fifth and Seventh Circuits. Dkt. No. 9, at 10. However, the Lamay court specifically concluded that "the additional disclosures . . . mandated in the Fifth, Seventh, and Eleventh Circuits are salutary but not required in this Circuit." Lamay, 562 F.3d at 510.

- 10 -

made based on the evidence in her case.  Id.  Plaintiff then filled out and signed a formal waiver of her right to appear at a hearing.  Id. at 37.  This one-page document contained the following:

> I have been advised of my right to appear in person before an Administrative Law Judge.  I understand that my personal appearance before an Administrative Law Judge would provide me with the opportunity to present written evidence, my testimony, and the testimony of other witnesses.  I understand that this opportunity to be seen and heard could be helpful to the Administrative Law Judge in making a decision.
>
> Although my right to a personal appearance before an Administrative Law Judge has been explained to me, I do not want to appear in person.  I want to have my case decided on the written evidence.
>
> . . .
>
> If I change my mind and decide to request a personal appearance before the Administrative Law Judge, I understand that I should make this request to the Hearing Office **before** the decision of the Administrative Law Judge is mailed to me.
>
> I understand that I have a right to be represented and that if I need representation, the Social Security office or hearing office can give me a list of legal referral and service organizations to assist me in locating a representative.

Id.  Drake signed at the bottom of this form and indicated that she did not "feel well enough to fight this case in person."  Id.

It was not until June 23, 2008—after the ALJ's decision had been mailed and after she obtained counsel— that plaintiff made known her desire to revoke her waiver.  Along with her appeal to the Appeals Council, Drake filed an affidavit in which she explained that she only completed the waiver because she did not feel well enough and was too nervous to attend a hearing.  Id. at 310–11.  Plaintiff asserted that nobody advised her that she could obtain free legal representation and claimed that she would not have waived her right to a

hearing had she known that she could have obtained representation. Id. However, as noted above, Drake was informed of her right to representation in writing on three separate documents. These notifications met the statutory and regulatory requirements for notification.

Moreover, there is no indication that plaintiff was unable to understand the documents she signed. Indeed, the record indicates that she graduated high school and earned her nurses' assistant certification. Additionally, she signed a consent form permitting the Social Security Administration to release information to the Legal Aid Society of Northeastern New York on October 26, 2006, evidencing her understanding that organizations were available to represent her. Id. at 36. Therefore, plaintiff's waiver was knowing and voluntary. Because the waiver was effective, it is unnecessary to evaluate any alleged prejudice.

### Development of the Record

An ALJ has a duty to develop the administrative record. Perez, 77 F.3d at 47. According to the regulations, the ALJ must "make every reasonable effort to help [the claimant] obtain medical reports" from the claimant's medical sources. Id. (quoting 20 C.F.R. § 404.1512(d)). When the evidence is inadequate to make a determination as to a claimant's disability, the ALJ will again contact the "treating physician . . .or other medical source to determine whether the additional information need[ed] is readily available." Id. (quoting 20 C.F.R. § 404.1512(e)).

On February 29, 2008, Dr. Dodge was requested to provide "all treatment notes from December, 2007 to present", and CVPHMC was requested to provide such notes from November 2007 to present. R. 283–84. On March 5, 2008, in response to these requests,

several pages of plaintiff's medical records were provided and are included in the record. Id. at 285–92. The most recent date in these records is found on a handwritten note dated December 28, 2007. Id. at 287. This note indicates that Drake was "doing well" with regard to bottle feeding her infant son and was due for a return visit in one year. Id. The lack of further medical records thereafter is thus not surprising. Accordingly, the ALJ made reasonable efforts to develop the record and obtain medical reports from Drake's treating physicians concerning the period between November 2007 and March 2008.

### 3. Weight of the Treating Physician's Opinion

Plaintiff claims that the ALJ improperly accorded more weight to the opinion of a consultative physician, Dr. Wassef, than to the treating physicians at CVPHMC and the opinions of Dr. Carbone and Dr. Hemond.

When determining the appropriate RFC, if the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record" it is given significant weight. Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. Id. The ALJ should consider the following six factors, none of which is dispositive, when determining what weight to accord treating, consulting, and non-examining sources: (1) the examining relationship; (2) the length and nature of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(d).

Plaintiff points to the treating physician's reports and suggests that they are in conflict with the RFC determination. However, a careful review of these records actually

- 13 -

supports the ALJ's finding that Drake could perform light work and required access to a handicapped bathroom. In his written decision, the ALJ correctly stated that "none of the claimant's treating physician [sic] noted any functional limitations in what the claimant could do." R. 23. Further, Dr. Carbone's medical reports indicate that plaintiff is "not an active patient", "has not returned for evaluation", and "is not treated by Dr. Carbone." Id. at 150–51. Dr. Carbone noted that she could not provide a medical opinion concerning plaintiff's work-related abilities. Id. at 152. Dr. Hemond evaluated plaintiff in June 2007, noted various physical ailments and impairments, and concluded that she could "[p]articipate in normal daily activities without limitation." Id. at 165. The remaining medical evidence supports the ALJ's conclusion that Drake suffers from the severe impairments of urinary incontinence, back and knee pain, and serous otitis media. Because the opinions of the treating physicians do not contradict Dr. Wassef's assessment, the ALJ did not err in assigning great weight to his opinion.

Plaintiff's argument that Dr. Wassef is "not qualified" to assess her level of impairment because he is a pediatrician is completely without merit. A quick electronic search returns a long list of cases in the Northern District in which Dr. Wassef's medical opinion was relied upon by ALJs. Moreover, Dr. Wassef's opinion was consistent with substantial other medical evidence in the record as well as the assessment of Dr. Calley.

### 4. Assessment of Plaintiff's Impairments

Drake next argues that the ALJ failed to consider her obesity, depression, pain, and urinary incontinence. Because the ALJ concluded that plaintiff's knee and back pain and urinary incontinence were, in fact, severe impairments, only the ALJ's consideration of plaintiff's obesity and depression will be addressed here.

Plaintiff's Obesity

Defendant acknowledges that the ALJ did not explicitly consider Drake's obesity during the disability evaluation process. Moreover, defendant does not dispute that plaintiff—at a height of 5'2" and weight of at least 252 pounds—is indeed obese. See id. at 116; Dkt. No. 10, at 9. However, defendant claims that the failure to explicitly address Drake's obesity was not error because she did not specifically raise the issue, it would not affect the outcome of the disability evaluation, and the RFC finding incorporated the assessment of Dr. Wassef, who was aware of Drake's obesity.

Defendant's assertion that Drake failed to allege that her obesity is an impairment is wrong. An ALJ is instructed to consider impairments the claimant has complained of as well as those of which the ALJ has received evidence. 20 C.F.R. § 404.1512(a); Brown v. Astrue, No. 8:08-CV-1165, 2009 WL 5219028, at *9 (N.D.N.Y. Dec. 31, 2009) (Kahn, J.). Plaintiff, who was proceeding pro se when the initial claim was filed, complained that she gained approximately 100 pounds in just one year. R. 119. There is support for this alleged significant and rapid weight gain in the record, which indicates that Drake weighed 188 pounds in January 2004 and 261 pounds in December 2006. Id. at 272, 155. Plaintiff opined to Dr. Wassef that this added weight caused her knees to "give out." Id. at 117. Additionally, plaintiff's obesity was well-documented throughout the medical record. See id. at 155, 234, 267. Thus, the issue of Drake's obesity was apparent and adequately raised.

When analyzing obesity, the ALJ is guided by Social Security Ruling 02-01p, which explains that "an individualized assessment of the impact of obesity on an individual's functioning" is proper when determining whether the impairment is severe at step two. SSR 02-01p, 67 Fed. Reg. 57859, 57862 (Sept. 12, 2002); Campbell v. Astrue, 713 F. Supp. 2d

129, 141 (N.D.N.Y. 2010) (Mordue, C.J. and Bianchini, M.J.). At step three of the process, obesity may combine with and increase the severity of other impairments to satisfy the requirements of a listing. SSR 02-01p, 67 Fed. Reg. at 57862.

Here, the ALJ did not explicitly consider Drake's obesity or mention her weight anywhere in his written decision. However, plaintiff does not explain how her obesity further impaired her ability to perform light work-related functions. Plaintiff merely asserts that she has difficulty walking and standing due to her weight. The ALJ, in relying on the medical reports that repeatedly noted Drake's obesity, implicitly factored this impairment into the evaluation. See Coburn v. Astrue, No. 07-CV-0029, 2009 WL 4034810, at *12–13 (N.D.N.Y. Nov. 19, 2009) (Bianchini, M.J.) (ALJ's failure to explicitly address obesity was not error because he relied on opinions of doctors who noted plaintiff's obesity and evaluated plaintiff's overall physical limitations); Hulbert v. Comm'r of Soc. Sec., No. 6:06-CV-1099, 2009 WL 2823739, at *11–12 (N.D.N.Y. Aug. 31, 2009) (Kahn, J.) (same). Accordingly, the ALJ did not err by failing to explicitly address Drake's obesity because he relied on the opinions of physicians who, as noted above, examined her personally, noted her obesity, and provided an overall assessment of her work-related abilities and limitations.

Plaintiff's Depression

Unlike Drake's obesity, the ALJ explicitly considered the impact of her alleged depression. The determination that plaintiff's mental health does not constitute a severe impairment is supported by substantial evidence in the record. While plaintiff evidences signs of depression in various documents and statements contained in the record, there is insufficient evidence that her mental condition significantly impacts her ability to perform work-related functions.

Due to a lack of mental health treatment, the state agency referred plaintiff to Dr. Summerell for a consultative psychiatric evaluation in September 2006. Dr. Summerell concluded that Drake was "mildly depressed", suffered from "Major Depressive Episode", and needed "long-term supervision in regard to [managing] disability benefits." R. 124. The ALJ assigned "minimal weight" to this assessment because Drake had not been under prior mental health treatment, Dr. Summerell met with her only once, and no significant psychopathology or ongoing depression was found. Id. at 21. While the failure of a person who suffers from depression to obtain treatment is common and should not be held against her, there is sufficient other evidence in the record to justify the ALJ's decision not to give great weight to Dr. Summerell's findings.

The Mental RFC Assessment prepared by the state agency consultant concluded that plaintiff had "the ability to carry out work procedures with a consistent pace, interact adequately with coworkers and supervisors, adapt to changes and handle stress in the workplace. Id. at 128. On a May 2006 Function Report plaintiff claimed that although she is "unhappy three quarters of the time," she is able to cook and care for herself, manage finances, visit her mother daily, follow written and oral instructions, and get along with authority figures. Id. at 84, 86–88. On a December 2007 Function Report plaintiff noted that she does not need reminders to care for her personal needs and grooming, gets along well with others, and is not affected by stress or schedule changes. Id. at 110, 113–15. Accordingly, there was sufficient evidence to support the ALJ's finding that Drake's mental health did not significantly impair her work-related functioning.

### 5. Credibility Assessment

Although the ALJ is required to consider plaintiff's reports of pain and other limitations when determining the RFC, he may use discretion when weighing the credibility of such subjective complaints. Genier, 606 F.3d at 49. When evaluating a claimant's assertions of pain and other limitations, the ALJ must utilize a two-step approach as outlined in the regulations. Id. First, it must be determined "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Id.; 20 C.F.R. § 404.1529(b). If so, the ALJ must then consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" in the record. Genier, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(b)). "It is the function of the [Commissioner], not the [reviewing courts], to resolve evidentiary conflicts and appraise the credibility of witnesses, including the claimant." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted). As long as the ALJ's decision to discredit the claimant's subjective complaints is supported by substantial evidence, that decision must be upheld. Id.

The ALJ found that Drake suffered from medically determinable impairments, namely urinary incontinence, back and knee pain, and serous otitis media. He then determined that her statements related to the intensity, persistence, and limiting effect of these impairments were inconsistent with the record and were therefore not credible. This decision was supported by plaintiff's aforementioned ability to cook and care for herself, manage finances, visit her mother daily, operate a car, complete household chores, care for her son, run errands, and perform past unskilled work despite her birth defects. Moreover, a

review of the function reports that plaintiff completed reveals numerous inconsistencies regarding her ability to bathe, cook for herself, go outdoors, handle savings and checking accounts, get along with others, walk, follow oral instructions, finish tasks she starts, and respond to stress. It is noted that in the time period between these two reports plaintiff was pregnant and had a baby. Nonetheless, the discrepancies in her reporting makes it difficult to accord great weight to either set of complaints. Finally, neither plaintiff's treating physicians nor the consultative examiners found that her impairments or diagnoses limited her work-related functioning beyond the need for handicapped bathroom access.

This collection of evidence undermines plaintiff's credibility and contradicts her assertion that she was completely disabled. Accordingly, the ALJ's decision to discredit Drake's subjective assessment of her limitations was supported by substantial evidence in the record.

## IV. **CONCLUSION**

The ALJ properly assessed all relevant medical reports and considered the severity of plaintiff's obesity and depression. The ALJ's determination that Drake had the RFC to perform light work with the need to access a handicapped restroom was supported by substantial evidence. The ALJ's decision to accord more weight to Dr. Wassef's opinion than those of other healthcare providers was proper in light of the fact that his assessment was consistent with other substantial evidence in the record. Moreover, the ALJ was justified in discrediting plaintiff's subjective complaints of pain and limitations as they were inconsistent with the objective evidence. Finally, the ALJ applied the appropriate legal standards and fully developed the record to afford plaintiff a full and fair proceeding.

Accordingly, it is

ORDERED that

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: December 20, 2010
       Utica, New York.